

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 2, 2022

**BY ECF AND EMAIL**
The Honorable Mary Kay Vyskocil
United States District Judge
500 Pearl Street
New York, New York, 10007

     Re:    *United States v. Jeffrey Molitor*, **20 Cr. 429 (MKV)**

Dear Judge Vyskocil:

     The Government respectfully submits this letter in advance of the sentencing in this matter, currently scheduled for September 7, 2022 at 2:00 p.m. The parties' plea agreement (the "Plea Agreement") stipulated that the applicable United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range is 121 to 151 months' imprisonment (the "Stipulated Guidelines Range"), and the U.S. Probation Office ("Probation") calculated a higher Guidelines range of 151 to 188 months. A custodial sentence below the Stipulated Guidelines Range would be sufficient, but not greater than necessary, to serve the purposes of sentencing in this case.

## I.    Offense Conduct

     The defendant stands before this Court convicted of possessing thousands of child pornographic files over an approximately four-year period. Many of these images depicted the sexual abuse or exploitation of particularly young children, including toddlers and infants.

     The Government first learned of the defendant in or around 2017, when, an individual attempting to cooperate with the Government ("CW-1")[1] proffered that CW-1 had previously sold crystal methamphetamine ("crystal meth") to the defendant on several occasions, generally while inside of the defendant's Manhattan apartment. PSR at ¶ 11. During one such sale, CW-1 observed a video of child pornography playing from within the defendant's residence; the video depicted approximately three naked prepubescent boys with an older gentleman. *Id.* At the time, the defendant stated that he had access to a young toddler or infant that the defendant was molesting, and separately described an incident in which the defendant sexually molested two children in Mexico. *Id.* During his proffers with the Government, CW-1 identified another individual ("CW-2") who had independent knowledge of the defendant's possession and use of child pornography. *Id.*

---

[1] CW-1 was charged with federal narcotics offenses and subsequently entered into a cooperation agreement with the Government in hopes of earning leniency at sentencing.

Federal Bureau of Investigation ("FBI") agents assigned to this case subsequently interviewed CW-2,[2] who confirmed that, in or around 2016, CW-2 had messaged with the defendant online – using the website www.nastykinkpigs.com ("NKP")[3] – the two subsequently met in-person whereupon they smoked crystal methamphetamine and watched child pornography together.  *Id.* at ¶ 12.  The defendant further informed CW-2 that the defendant possessed approximately 80,000 child pornography files, and had engaged in sexual activity with minors.  *Id.*

Thereafter, based on this information, an FBI undercover officer ("UC-1") created an NKP account under the pretense that UC-1 was CW-2, which UC-1 used to communicate with the defendant.  *Id.* at ¶ 13.  During their communications, the defendant invited UC-1 to meet and watch child pornography together "again," further stating, in substance, "I'VE GOT SOME GREAT NEW TABOO SHIT . . . Trust me, I have plenty of [young] stuff.  Netflix volume."  *Id.*

In October 2018, an individual who had been arrested on federal child pornography charges ("CW-3") provided a post-arrest statement in which CW-3 admitted to initially meeting the defendant on NKP, and later in-person.  *Id.* at ¶ 15.  While in the defendant's apartment, CW-3 and the defendant watched child pornography together.  CW-3 indicated that the defendant had an extensive child pornography collection, and that the defendant recounted several instances in which the defendant engaged in sexual activity with minors.  *Id.*

A subsequent FBI review of the defendant's NKP account, searched pursuant to a judicially authorized warrant, revealed multiple communications between the defendant and others regarding the possession and exchange of child pornography.  *Id.* at 17.

In November 2019, the defendant began communicating with a second FBI undercover officer ("UC-2").  *Id.* at ¶ 18.  During one such communication, the defendant engaged in a videocall with UC-2 in which the defendant shared items of child pornography and described additional items of child pornography in his possession. Some of these videos depicting adult males raping approximately 8-to-12 year-old minors.  *Id.* at ¶¶ 19-21.

On January 29, 2020, law enforcement executed a search of the defendant's apartment. Upon being advised of and waiving his *Miranda* rights, the defendant admitted that he had been trading child pornography since he was approximately 17 years old.  *Id.* at ¶ 23.  Law enforcement also recovered a substantial quantity of digital child pornography from the defendant's apartment.  *Id.* at ¶ 24, 26.  Many of these materials depicted prepubescent minors; sadistic or masochistic conduct or other depictions of violence, and/or sexual abuse or exploitation of an infant or toddler.  *Id*. at ¶ 26.  The defendant's child pornography was submitted to the National Center of Missing and Exploited Children ("NCMEC"), which identified 1,838 images of child pornography and 1,018 videos of child pornography.  *Id.* at ¶ 29.

---

[2] At the time CW-2 provided information to the Government, CW-2 was not facing criminal charges nor was CW-2 being paid as an informant.

[3] NKP is a website commonly used as a meeting place for individuals interested in child pornography.  (PSR at ¶ 12).

The Government has no information that the defendant engaged in the production of any child pornography. The only information the Government has that the defendant engaged in "hands on" sexual conduct with minors are the statements that the defendant made to CW-1, CW-2, and CW-3.

## II.     Procedural History and the Guidelines Range Calculation

On January 29, 2020, the defendant was arrested on probable cause, and a complaint charging the defendant with child pornography offenses was sworn out the same day.   The defendant was presented and bailed on home incarceration.

On August 24, 2020, the defendant waived indictment and the Government filed an information charging the defendant in two counts.   Count One charged the defendant with distribution of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(2)(B) and 2252A(b)(1).   Count Two charged the defendant with possession of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B), 2252A(b)(2), and 2.

On December 15, 2021, the defendant pled guilty, pursuant to the Plea Agreement, to Count One.[4]   Count One carries a maximum term of imprisonment of twenty years; a mandatory minimum term of imprisonment of five years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of five years; a maximum fine of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; a $100 mandatory special assessment; and an additional assessment of $5,000, pursuant to Title 18, United States Code, Section 3014(a).

The Plea Agreement set a base offense level of 22.   The offense level is enhanced because the defendant's child pornography collection: involved a minor who had not attained the age of 12 years (2 levels); involved sadistic or masochistic conduct or other depictions of violence, or portrayed the sexual abuse or exploitation of an infant or toddler (4 levels); involved the use of a computer (2 levels); and included at least 600 images (5 levels).   After a 3-level reduction for acceptance of responsibility, the total offense level was 32.

The PSR calculated the same base offense level and all the enhancements and reductions described above, but also included a two-level enhancement because the defendant knowingly engaged in distribution, other than distribution described in subdivisions (A) through (E), pursuant to §2G2.2(b)(3)(F).   *Id.* ¶ 37.   The PSR therefore calculated the total offense level as 34.   The defendant has four prior convictions.   *Id.* ¶¶ 50-53.   None of those convictions were for similar offenses, none resulted in a substantial jail term, and the most recent was from 1993.   The defendant has zero criminal history points, and is in Criminal History Category I.   Accordingly,

---

[4] The delay between the defendant's arrest and the guilty plea was primarily a function of both the defendant's health issues and lengthy plea negotiations involving a substantial submission to this Office's Mitigation Committee.

the Stipulated Guidelines Range is 121 to 151 months, and the Guidelines Range calculated by the PSR is 151 to 188 months.[5]

## III.   Victims and Restitution

The defendant's child pornography collection depicted at least 296 victims who have been previously identified by law enforcement. *Id.* ¶ 29.  Twenty-nine victim impact statements were submitted to the Court. *Id.* ¶ 30.

The Government received restitution requests on behalf of eighteen victims.  The Government conferred with each of the eighteen victims who made restitution requests, and each of them approved the Government seeking restitution in the amounts of between $3,000 and $5,000 per victim, which amounts to a total of $80,000.  For each of the eighteen victims, the Government verified that there is a difference of at least $5,000 between the alleged loss amount and the amount of money that the victim has been paid pursuant to restitution orders entered in other cases.  A copy of the Consent Order of Restitution that the defendant has represented he will sign on the date of sentencing (Dkt. 86 at 2) is attached here as Exhibit A, and the Government respectfully requests that the Court enter the Order at the time of sentencing.[6]

The PSR includes a special condition that the defendant not contact any victims in the case, and the Government further requests that the Court order that special condition.

The Government also expects to submit a Consent Order of Forfeiture in advance of sentencing.

## IV.   Conduct on Pretrial Release

The defendant was bailed and placed on home incarceration after his arrest on January 29, 2020.  On August 3, 2021, Pretrial Services submitted a first violation memorandum to the Court because the defendant had tested positive for methamphetamine on March 16, 2020, August 28, 2020, and July 14, 2021.  On September 17, 2021, Pretrial Services submitted a second violation memo to the Court because the defendant had repeatedly failed to report for drug testing.  On October 21, 2021, Pretrial Services submitted a third violation memorandum because the defendant had again repeatedly failed to report for drug testing.

On November 19, 2021, the defendant appeared before the Court for a violation hearing, and was informed in sum and substance that this was his last chance to comply with the drug

---

[5] Although the Government acknowledges that there is a legal and factual basis for Probation's Guidelines calculation and the enhancement described at Paragraph 37, the Government stands by its Plea Agreement.

[6] Consistent with 18 U.S.C. §§ 3771(a)(8) & 3664(d)(4) and Federal Rule of Criminal Procedure 49.1, the copy of the Order submitted on the docket redacts the Schedule of Victims. As noted in the Consent Order of Restitution, the Government respectfully requests that the Schedule of Victims attached to the Order be filed under seal, consistent with 18 U.S.C. §§ 3771(a)(8) & 3664(d)(4) and Federal Rule of Criminal Procedure 49.1.

testing conditions.   On December 6, 2021, Pretrial Services submitted a fourth violation memorandum because the defendant had again repeatedly failed to report for drug testing.  That same day, the Court authorized a warrant for the defendant's arrest based on the violations of the conditions of pretrial release, and he was arrested the next day.

**V.** ███████████████████████████████████████████[7]



**VI.     Applicable Law**

The Guidelines provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264.  As the Supreme Court stated, "a district court should begin all sentencing

---

[7] The Government respectfully requests permission to file the section of this letter discussing ███ under seal, ████████████████████████████████████.

proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the U.S. Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## VII.   Discussion

Here, a custodial sentence below the Stipulated Guidelines Range of 121 to 151 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

Possession of child pornography is extraordinarily serious and warrants significant punishment and deterrence, including general deterrence.

As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children.  Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

*United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013).  A child pornography victim "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline v. United States*, 572 U.S. 434, 456-57 (2014) (harm to child pornography victim is caused by "the trade in her images," and defendant who possessed such images "is a part of that cause, for he is one of those who viewed her images").  "Harms of this sort are a major reason why child pornography is outlawed," and "[t]he unlawful conduct of everyone who . . . possesses the

images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy." *Id.* at 457.

It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through . . . the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982). This interest extends to seeking to stamp out child pornography wherever found. *See Osborne v. Ohio*, 495 U.S. 103, 110 (1990).

The seriousness of the defendant's conduct cannot be overstated. He possessed a huge volume of child pornography – much of which depicted the rape and/or exploitation of small children – and repeatedly shared it with others. The fact that three separate individuals who have been charged federally in this district each independently reported to the defendant's possession and use of child pornography further attests to the significance and scope of his conduct. And even after being bailed, the defendant continued to illegally use methamphetamine and to avoid drug testing, forcing the Court to remand him.

Nevertheless, the defendant's criminal conduct is mitigated by several factors which counsel for a significant sentence, but one that varies downward from the Stipulated Guidelines range. First, the Government credits that the defendant had an extremely difficult and abusive childhood. *Id.* at ¶¶ 61-65. The defendant also has serious physical and mental health issues, and his addiction to crystal methamphetamine may have driven at least some of his criminal conduct. *Id.* at ¶¶ 70-87. Importantly, the defendant was not involved in the production of child pornography. Furthermore, the Government lacks any evidence that corroborates the defendant's statements to CW-1, CW-2, and CW-3 that he was engaged in sexual activity with minors. Finally, ███████████ ████████████████████████████████████████████████████████████████████.[8]

The mandatory minimum term of imprisonment in this case is 60 months. A term of imprisonment between 60 months and the Stipulated Guidelines Range would be appropriate in this case.

---

[8] ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████.

**VIII.    Conclusion**

A custodial sentence below the Stipulated Guidelines Range of 121 to 151 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Jonathan Rebold
Kevin Mead
Assistant United States Attorneys
(212) 637-2512/2211

Enclosures

cc: Sarah M. Sacks, Esq. (by ECF and email)